Good morning, Your Honors. You may proceed. May it please the Court. My name is Matt Hayhurst, and I am honored to be here today on behalf of the petitioner, Hansi Wang. With the recognition that my time is very short, I will make every effort to cut to the chase. I had the good time. Dozens of immigration cases came through chambers, and frankly, very few of them were decided in favor of the petitioner. So when the Court appointed me to represent Mr. Wang in this case, the first question I had, and the fundamental question I would like to address at the outset here today, is what makes Mr. Wang's case different and worthy of the Court's I believe that the Board engaged in sort of a grammatical hide-and-seek, making assumptions about words in order to create inconsistencies. And there are two examples of this, the first being Mr. Wang's use of the phrase, by chance, with regard to his adoption of Christianity. Now, he testified that he was down and out, he was without faith, and he happened to come across a minister, a Christian minister, and ultimately adopted the religion. What he wrote in his asylum application was that he went to Mass by chance. Now, by chance has two equally acceptable definitions. The government doesn't dispute this, and one of those definitions is without a plan. Therefore, Mr. Wang's testimony is perfectly consistent with the meaning of by chance. He didn't meet Minister Wong with the intent of adopting the religion and converting. He simply went there, learned about the Bible, the message resonated with him, and he adopted the religion. Mr. Hayrus, let me go forward a little bit in analysis on this. And by the way, we appreciate you doing this pro bono and especially coming down from Montana to do it. There are two claims here. One's religious-based, and the other one is based on China's family planning policy. Let's assume for the moment that we, well, are those claims independent or dependent on each other? I think they're totally independent of one another, and they're separate bases. So is that true with respect to the adverse credibility finding as well? For example, if we were to agree with the board that the adverse credibility finding with respect to his religious claim should be sustained, what's the consequence of that, hypothetically? Well, I think if the court finds that a portion of Mr. Wang's testimony lacks credibility, then, quite frankly, it would probably have the ability to then doubt the rest of his testimony. But in order to get there, the court has to have a legitimate, specific, cogent reason for doubting his credibility in the first place. Sure. But I guess my question is more like, for example, if we were to say, well, the substantial evidence supports the board's finding of adverse credibility with respect to the religious claims, but it does not support the board's finding of adverse credibility with respect to the family planning claims, what is the consequence of that? Well, I think that he would still have a valid claim under one of those independent bases. An alien can testify about two different aspects of their claim, and the court may say, you know, I don't believe you about this part, but we do believe you about this part. And if indeed that is the case, and he was persecuted on account of his objection to the family planning practices in China, then he would have, in my view, a basis not only for asylum but withholding of deportation and relief under the Convention Against Torture. Thank you. But don't we have a standard of review here which suggests that we look for substantial evidence to support the individual not credible with respect to one issue, notwithstanding the possibility that he's quite credible as to the other? Don't we have to affirm? I don't think the court's required to impose a blanket adverse credibility finding if there is no basis for questioning his credibility about a separate and independent basis of his immigration claim. And again, if an alien were to testify in an incredible manner about the way in which he entered the United States, for example, and the court were to say, we don't believe you on that aspect, but we do believe you about what happened to you back in your home country, then I don't think that the court would be prevented from doing that, Your Honor. Do you have a case that permits that? I don't, Your Honor. Moving back to the first point very briefly, the board engaged in the same kind of grammatical assumption with respect to the discovery of the pregnancy. And I think it's just a plain reading of the asylum application that shows what the board has done here. The application says, my wife became pregnant, her employer found out about it, and then in a separate sentence, it says, she was forced to have an abortion. And what the board has done and what the government's done on appeal is assumed that what Mr. Wang, who doesn't speak English, meant was that the employer discovered the pregnancy, reported it, and forced her to have an abortion. That's just not what the application says. The second reason why this case is different than other immigration cases is the catch 22 that Mr. Wang was put into by the board. And what I mean by that is that he testified for hours on the witness stand, literally. The testimony spans over 100 pages. But his asylum application contains a one-and-a-half-page narrative. So the board came in and faulted Mr. Wang for providing more detail orally than he provided in his one-and-a-half-page application. And then in the rare instance where the board was satisfied with the detail in the application, for example, with respect to the threat against his family after he left the country, the board then criticizes Mr. Wang for not mentioning that on direct examination. So it's kind of a lose-lose situation for Mr. Wang in this instance. And that's just not permitted by this court's precedent. And finally, the last difference between this case and the others is the misleading interrogation by the immigration judge. I think the record speaks for itself on this point. But the government has conceded on appeal that there was at least one misstatement in the immigration judge's questioning of Mr. Wang. To the extent that an inconsistency arises from misleading, erroneous cross-examination by a judge, that's cases that say that. In fact, the He case and the Garavias case talk about the requirement and the importance of an unbiased, fair immigration judge. Now, in my opening brief, what I said was there was only one real inconsistency in this case, and that was with respect to the timing and circumstances of his jailing by the police. The INS has found that there was an adverse credibility finding. So the only inconsistencies that are created here were created under the three categories I discussed above, none of which are permissible for an adverse credibility finding. Unless there are questions, I'll reserve the balance of my time. Roberts. You may do so, counsel. May it please the Court, my name is Kristen Edison, and I represent the Attorney General. It's Petitioner's burden in this case to demonstrate that the record compels reversal of the Board's decision, and from a procedural standpoint, he was given every opportunity to do so. Petitioner's claim for asylum was presented by an asylum officer, the immigration judge, and then by the Board, and each reached the same conclusion that Petitioner did not meet his burden of presenting credible evidence and testimony in support of his claim for asylum. And, Your Honor, I'd like to note that the Board found that Petitioner didn't present credible evidence on both bases of his claim for asylum, the family planning policy aspect and the religious aspect as well. So would you mind addressing the same question that I posed to Mr. Hayhurst and Ms. Edison? If we agree with the Board in part, hypothetically, and disagree with them in part on an adverse credibility finding, where does that leave us? In other words, let's assume, and you could assume either way, that we agreed on the family planning or we agreed on the Board's adverse credibility finding on his religious claims. Where does that leave the claim, if we think one claim is good and the other one is not with respect to the Board's findings on credibility? Well, Your Honor, obviously in this case the Board found that Petitioner was not credible on either account, and in order to establish eligibility for asylum, he must do so through credible testimony. Right. I'm asking a hypothetical question. It need not even involve this case. But I guess, let me put it a little differently. In order to sustain the Board's credibility findings, the adverse credibility findings have to go to the heart of the claim. So it seems to me that if you have two independent claims and the Board rejects one, or both of them based on different adverse credibility findings, those findings don't necessarily translate to the other claim, because the adverse credibility determination would necessarily not go to the heart of the other claim. It could, I suppose, if you had a common adverse credibility. But in this one, the adverse credibility findings are quite distinct. So with that long preamble, what's the Government's or what's your position on whether or not the claims are independent or not with respect to the adverse credibility determinations? Well, at this point, Your Honor, it's the Government's position. In fact, if I'd be happy to respond in writing, perhaps it could provide a better response if I were able to do that. But at this point, no. Okay. That's fine. Thank you. Well, let me just follow up that. Suppose we are persuaded that there was substantial evidence to support the credibility finding with respect to the family planning claim, but we're not persuaded on the religious claim. What happens? What's our role at that point? Your Honor, if you find that the record compels reversal of the Board's decision on the family planning claim, but not the religious claim? I suppose that's sort of a related question. Well, it's the same. It's essentially the same question. Right. But it involves this case. So I'm hoping that you can give us a little help on how to deal with it. Your Honor, I'd feel more comfortable if I were able to respond in writing to that question, but still it's the position of the Government that Petitioner had every opportunity to prove both claims, and he didn't do so. And particularly, the Board doesn't — didn't doubt that, in general, individuals are persecuted in China on account of the family planning policies. In this case, the Board found that Petitioner didn't credibly establish the facts of his claim, and it provided numerous material reasons — it highlighted numerous discrepancies between Petitioner's asylum application and his hearing testimony, as well as his failure to corroborate his claim with respect to the family planning policy aspect of his claim. Particularly, Petitioner testified that he had remained in contact with his wife, and Petitioner had about a year since he was asked about evidence in his claim to submit — he was given, as the record shows, about a year to submit, for example, the notice of sterilization — notice to report for sterilization that he testified he received. The case was continued to give Petitioner's counsel an opportunity to do that, and I'd like to refer, Your Honor, to pages 227 of the record, 231, 242. Petitioner had testified at page 199 that he had a copy of the letter that he had sent to the police, but he didn't find that important, so he didn't submit it to the judge. He also testified that he had that notice of sterilization, but he no longer knew where it was. That's at page 202. So, Your Honor, it's the government's position that Petitioner simply didn't meet his burden of proving his claim on account of China's family planning policies. And absent any other questions? No further questions. Mr. Hayworth, you have reserved some time. Thank you, Your Honor. Very briefly, to get back to Judge Thomas's point, you know, there is law in the circuit that says that if you're going to have an adverse credibility finding, there has to be a nexus between the credibility finding and Petitioner's claim. I think from that law, itself, you can derive the rule that Judge Thomas is referring to, where if there's an adverse credibility finding over here, if there's an independent claim over here that is supported by credible evidence, then, in fact, you would have a credible claim and the right to asylum or withholding of deportation. Do you have a case that holds that? Well, there's numerous cases that talk about the nexus requirement, where you'll have peripheral, say, minor inconsistencies in the testimony of the Petitioner, and then the court will say, notwithstanding those minor inconsistencies about peripheral events, the testimony about the single claim. But here we have two claims. We've got the religious and we've got the family planning claims. That's true. That's true. But I think that from that general rule of requiring a nexus from credibility to the claim itself, that you can draw the rule that Judge Thomas is talking about. And I apologize that I don't have a case that says that directly. Secondly, in terms of what should happen to this case, if the court finds that there is a basis for no basis for credibility on either claim, there is a reasonable basis for a credibility finding under the Q case, QU. And the final thing that I'd like to say, Your Honor, is that the immigration judge, although she had real concerns about Mr. Wang's testimony, she said in her order that if he were credible, he would be entitled to asylum, and I think that that's critical. If the court finds that there's not a specific, cogent, reasonable basis for this credibility finding, then Mr. Wang is entitled to asylum in this case. Thank you, counsel. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Thomas